SILVER GRIDDLE COMPANY, Appellee,

v.

CITY OF OKLAHOMA CITY, a municipal corporation, and Judy Watson, Supervisor of the License Division of the City of Oklahoma City, Appellants.

No. 48983.

Supreme Court of Oklahoma.

July 26, 1977.

Rehearing Denied Nov. 2, 1977.

Shadid, Black & Homsey by Charles A. Shadid and Gary B. Homsey, Oklahoma City, for appellee.

Walter M. Powell, Municipal Counselor by Diane L. Davis, Asst. Municipal Counselor, Oklahoma City, for appellants.

BARNES, Justice.

Appellant, City of Oklahoma City (City), appeals from an order of the District Court of Oklahoma County granting Appellee, Silver Griddle Company (Silver Griddle), a Writ of Mandamus directing the licensing supervisor of said City, Appellant, Judy Watson (Watson), to issue a license permit to Silver Griddle for the sale of 3.2 beer to be sold for on-premises consumption.

The pertinent facts are these: In January, 1974, Appellee was issued city, county, and state licenses for the Silver Griddle located at 1708 North Indiana, Oklahoma City, Oklahoma, for the purpose of selling beer on the premises.

When the city license came due for renewal, Appellant Watson refused to issue the permit to Silver Griddle following its application for a beer on premises and eating place license. Watson testified the license was refused for the reason that the location of the business premises did not provide one off-street automobile parking space for each two hundred square feet of floor space in the business premises, thus being in violation of the City's zoning ordinance, § 25–113(b) of the Code of the City of Oklahoma, 1970, as amended.

The record reflects the building had been occupied for operation of selling beer since September, 1974; that it contained 1200 square feet; and that approximately 300 square feet thereof was used for storage.

Bill Stine, operator of the Silver Griddle, testified there were eight paved metered parking spaces in front of the business and six paved spaces in an alley on the side. He further testified he was forced to close his business in July, 1975, when Appellant failed to renew his city license.

Silver Griddle's pleading for an Alternative Writ of Mandamus filed in the District Court set forth the following allegations:

(1) That Silver Griddle Company on July 23, 1975, made an application with Mrs. Watson for a license for beer on premises and has made full compliance with Section 2.3.05 of the Revised Ordinances of The City of Oklahoma City, Oklahoma (1960).

(2) That on the same day as the application, Silver Griddle Company made a demand upon Mrs. Watson, but was denied for the reason that the applicant did not comply with Section 25–113 of the Oklahoma City Code relating to parking requirements.

(3) That such refusal was contrary to Section 163.11 of Title 37 of the Oklahoma Statutes, the statute which provides for the issuance of retail permits from the District Court Clerk, since that section makes no reference or mention of any city ordinance, nor does it make compliance with any such ordinance a requirement for obtaining any non-intoxicating beverage license.

(4) That Section 163.10 of Title 37 of the Oklahoma Statutes allows municipal corporations to charge an annual license fee from retail dealers, but "by no means gives municipal corporations the power to regulate or control the sale of non-intoxicating beverages within such municipalities."

(5) That Silver Griddle's constitutional right to use its business property had been violated in that it had been given a Beer on Premises License on the same location previously.

(6) That Silver Griddle has complied with the parking requirement in that it is a non-conforming use.

(7) That for the reasons stated a mandamus should be issued directing the City and Mrs. Watson to issue the applicant its license.

Following Silver Griddle's application to the District Court for a Writ of Mandamus directing Watson, the licensing supervisor, to issue the license, the Trial Court found that Silver Griddle had complied with the requirements of the City's Code, § 25–113(b), which was a valid and constitutional ordinance enacted under the municipality's legislative authority to zone property, and granted the Writ.

The City complied with the Trial Court's order to issue the license on August 21, 1975. Thereafter, within the statutory time, the City filed this appeal.

While Appellants argued at trial that the Silver Griddle had not exhausted its administrative remedies in seeking an appeal of Watson's decision to the City's Board of Adjustment before coming before the District Court on a Writ of Mandamus, the Trial Court made no ruling as to the exhaustion doctrine. We feel that this issue is determinative of this appeal.

The ordinance which is the subject of this controversy is set forth in the Code of the City of Oklahoma City, 1970, as amended, as follows:

"Sec. 25–113. Parking regulations.

(a) Dwelling unit. One (1) parking space shall be provided for each dwelling unit in a structure.

(b) Commercial building. Except as provided in Article V, *if a lot is occupied by a commercial building, one (1) parking space shall be provided for each three hundred (300) square feet of floor space in the building, and any restaurant or establishment that serves meals, lunches, or drinks to patrons either in their cars or in the building shall provide one (1) parking space for each two hundred (200) square feet of floor space in the building.*

(c) Unloading facilities not to obstruct traffic. If a lot is occupied by a commercial building, adequate off-street facilities shall be provided for the loading and unloading of merchandise and goods within

the building or adjacent to a public alley so as not to obstruct traffic upon the public street." (Emphasis ours)

Appellants argue that Appellee failed to exhaust its administrative remedies by failing to appeal denial of the license to the City's Board of Adjustment under 11 O.S. 1971, § 407, and thereafter appealing from the Board of Adjustment to the District Court of the County in which the municipality is located, pursuant to 11 O.S.1971, § 408.

It is further Appellants' position that the Court should apply the exhaustion doctrine on the ground that even if the jurisdiction of the Board should be subject to being upset by the courts, still it is necessary that the administrative agency decide whether it has jurisdiction, and that the first mode of attacking such decision is by taking the appeal provided for by statute. 2 Am. Jur.2d Administrative Law, § 604, *United States v. Sing Tuck*, 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917 (1904).

In support of their argument, Appellants rely on *Melton v. City of Durant*, 521 P.2d 1372 (Okl.1974), in which the plaintiff sought a writ of mandamus to direct the zoning administrator to issue a permit for the placement of two additional mobile home trailers in plaintiff's trailer park. The plaintiff there did not appeal the decision of the zoning administrator and the Board of Adjustment, but sought an original action in the district court seeking mandamus pursuant to 12 O.S.1971, § 1452. The Court denied the writ, which was the basis for appeal, affirmed the Trial Court, and determined that a mandamus will not lie to review the decisions of an administrative official where there is an effective administrative remedy which provides for judicial review, citing *State ex rel. Crawford v. Corporation Commission*, 184 Okl. 127, 85 P.2d 288 (Okl.1939), and *Southwestern Natural Gas Co. v. Vernor*, 178 Okl. 344, 62 P.2d 1262 (1937). The Court in *Melton* determined the statutory appeal procedure provided in 11 O.S.1971, § 408, was an adequate remedy at law.

Appellee herein contends it sought the Writ of Mandamus in District Court to challenge the constitutionality of City's authority to regulate the sale of beer through the use of zoning ordinances. Appellee cited 11 O.S.1971, § 401, the enabling statute for zoning, § 2.3.05 .of the Revised Ordinances of The City of Oklahoma City, Oklahoma (1960), which sets forth requirements for Application for Retail Dealers license, and 37 O.S.1971, § 163.11, which provides requirements for obtaining retail permits from the District Court Clerk. Appellee points out that these sections make no specific mention of the City's authority to regulate the size and number of parking spaces, nor do the sections make compliance with a city ordinance a requisite for obtaining any non-intoxicating beverage license. Appellee urges these statutes raise a question as to the constitutionality of the zoning regulation in question and therefore the Writ of Mandamus was properly considered by the District Court.

Appellee submits the elements necessary to dispense with the doctrine of exhaustion of administrative remedies as set forth in *Martin v. Harrah Independent School District*, 543 P.2d 1370 (Okl.1975), are met in the instant case. We said in *Martin, supra* :

"The presence of constitutional questions coupled with a sufficient showing of inadequacy of prescribed administrative relief and of *threatened or impending irreparable injury resulting from delay incident to following the prescribed procedure* has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention." (Emphasis ours)

Appellee contends it may properly pursue relief by way of mandamus to avoid further delay, set to rest the prospect of increasing monetary loss and permanent damage to business good will.

We find the Appellee's position unpersuasive. We agree with Appellants that Appellee is required to exhaust its administrative remedies by appeal to the Board of Adjustment before it seeks a Writ of Mandamus in the District Court. A Writ

of Mandamus may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law. Mandamus is an extraordinary remedy to be resorted to where the usual mode of procedure cannot furnish the desired relief. It is only if the statutory remedy is not adequate to protect the rights of the plaintiff that a Writ of Mandamus may be issued. *Martin v. Harrah Independent School District, supra; Melton v. City of Durant, supra.*

Under the Oklahoma statutes, 11 O.S. 1971, §§ 402, 407, cities and towns are given the authority to enact zoning classification ordinances and to appoint a Board of Adjustment. Boards of Adjustment are given the power to hear and decide appeals where it is alleged there is error in any determination made by an administrative official in the enforcement of building and zoning statutes or of the city ordinance.

Title 11 O.S.1971, § 407, provides in pertinent part:

"The Board of Adjustment shall have the following powers:

"(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this act or of any ordinance adopted pursuant thereto.

\*    \*    \*    \*    \*    \*

"In exercising the above-mentioned powers such Board may, in conformity with the provisions of this act, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken."

Thus, if the Board of Adjustment thinks that the Appellee should have been granted a permit, then it has the authority to modify the order and grant the permit. On the other hand, if the Board of Adjustment sustains the Appellants' action, then Appellee may appeal to the District Court.

Judicial review of adverse rulings of the Board of Adjustment is governed by 11 O.S.1971, § 408, which states that the City Council by ordinance shall provide for appeals from any administrative officer to the Board of Adjustment and from the Board of Adjustment to the District Court of the County where the municipality is located.

In *Melton v. City of Durant, supra,* the Court said:

"Thus, there is a well-defined statutory scheme for review of orders or determinations by municipal zoning officials. There is then, in this case, a remedy for the plaintiff who feels aggrieved other than by mandamus. We see no compelling reason why we should deviate from the statutory requirement that the plaintiff seek relief through the ordinary course of the law, rather than the extraordinary course of writ of mandamus. 12 O.S.1971, § 1452."

It is well settled in Oklahoma that exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts. The purpose of the rule is to aid in the orderly administration of justice and to prevent transfer to the courts of duties imposed by law on administrative agencies. It is only where administrative remedies are not adequate that the courts may take jurisdiction prior to the actual exhaustion of administrative remedies, and then a strong showing is required of the alleged inadequacy of the prescribed administrative remedy. *Lincoln Income Life Insurance Co. v. Wood,* 556 P.2d 602 (Okl.1976); *Martin v. Harrah Independent School District, supra.*

The Appellee was required under the statutes and decisional law to exhaust its administrative remedies by appeal to the Board of Adjustment, and, if necessary, by further appeal to the District Court before it sought a Writ of Mandamus.

Order of the Trial Court is reversed and cause remanded for exhaustion of administrative remedies.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, IRWIN, BERRY and DOOLIN, JJ., concur.

SIMMS, J., concurs by reason of stare decisis.