Tracy and Damian OSTERHUES, Art and Ellen Jacobs, and Andrew and Luella Peterson, Plaintiffs-Respondents-Cross-Appellants-Petitioners,

v.

BOARD OF ADJUSTMENT FOR WASHBURN COUNTY, Defendant-Co-Appellant-Cross-Respondent,

WASHBURN COUNTY, Defendant-Appellant-Cross-Respondent.

Supreme Court

*No. 2003AP2194. Oral argument February 1, 2005.*
*—Decided June 28, 2005.*

2005 WI 92

(Also reported in 698 N.W.2d 701.)

For the plaintiffs-respondents-cross-appellants-petitioners there were briefs by *Joseph R. Cincotta* and *Schweitzer & Cincotta LLP,* Milwaukee, and oral argument by *Joseph Cincotta.*

For the defendant-co-appellant-cross-respondent there was a brief by *William G. Thiel* and *Weld, Riley, Prenn & Ricci, S.C.,* Eau Claire, and oral argument by *William G. Thiel.*

For the defendant-appellant-cross-respondent there was a brief by *R. Michael Waterman* and *Mudge, Porter, Lundeen & Seguin, S.C.,* Hudson, and oral argument by *R. Michael Waterman.*

¶ 1. DAVID T. PROSSER, J.    This is a review of a published decision of the court of appeals, *Osterhues v. Board of Adjustment for Washburn County*, 2004 WI App 101, 273 Wis. 2d 718, 680 N.W.2d 823, that reversed a judgment and order of the circuit court for Washburn County, Robert H. Rasmussen, Judge. The court of appeals held that a county board of adjustment does not have the authority to conduct a de novo review of a county zoning committee's decision. We reverse.

¶ 2.    When reviewing the decision to grant or deny a conditional use permit, a county board of adjustment has the authority to conduct a de novo review of the record and substitute its judgment for the county zoning committee's judgment. Moreover, under the applicable state statute, a board has authority to take new evidence. Wis. Stat. § 59.694 (2001–02).[1] We reach this conclusion for the following reasons: First, the plain language of the statute gives the board "all of the powers of the officer from whom the appeal is taken" when "error is alleged." Second, the Wisconsin law is based on a model statute enacted by almost all states, and other states have consistently agreed that the board of adjustment has the power of de novo review. Third, it appears from prior appellate decisions that boards of adjustment in this state commonly exercise the power of de novo review, and take additional evidence, when reviewing grants and denials of conditional use permits.

## I. FACTS AND PROCEDURAL POSTURE

¶ 3.    The facts material to this appeal are undisputed. In 2001, the Washburn County Highway Depart-

---

[1] All subsequent references to the Wisconsin Statutes are to the 2001–02 edition unless otherwise indicated.

ment (the Department) was searching for a site upon which to construct a new gravel pit. The Department decided that Alvin Todd's 40–acre parcel in the Town of Beaver Brook would suit its purposes. However, Todd's parcel was zoned "Agricultural (A)." Under Washburn County's zoning ordinance, a gravel pit is a conditional use, not a permitted use, in that zone. Accordingly, the Department conditioned its purchase on its ability to obtain a conditional use permit from the Washburn County Zoning Committee (the Committee) authorizing the construction of the gravel pit.

¶ 4. On June 25, 2001, the Department filed its application for a conditional use permit with the Committee. On July 9, 2001, the Committee notified the surrounding property owners, including plaintiffs Damian and Tracy Osterhues, that it would consider the Department's application on July 24, 2001. The Committee also consulted with the host municipality, the Town of Beaver Brook, requesting Beaver Brook's recommendation on the permit application. On July 11 Beaver Brook recommended granting the permit subject to thirteen conditions. On July 24 County Highway Commissioner Mike Servi appeared before the Committee to request the permit. Tracy Osterhues and others appeared in opposition. The meeting minutes do not disclose the extent to which she and other citizens opposing the permit were allowed to present evidence, but Osterhues does not dispute that she had a full opportunity to argue her case before the Committee. Ultimately, the Committee voted to grant the permit, with only one vote opposed. On July 31 the Committee issued a written order memorializing the permit grant.

¶ 5. In August 2001 the Town of Beaver Brook asked the Committee to reconsider the permit grant because "the Town Board of Beaver Brook has changed

[its] recommendation . . . ." The Committee agreed to do so, and scheduled the matter for rehearing at the September 25, 2001, Committee meeting. The Osterhues and others again appeared in opposition. The Committee reapproved the permit grant with some additional conditions.

¶ 6.  On November 19, 2001, the Osterhues and other surrounding property owners filed a notice of appeal of the Committee's decision with the Washburn County Board of Adjustment (the Board), alleging several errors including claims that the surrounding neighbors received insufficient notice of the project and that the Committee's action violated several Washburn County ordinances. The Board considered the matter at its meeting on January 9, 2002. Various surrounding property owners, including Tracy Osterhues, spoke in opposition to the project.[2] The Town Chairman of Beaver Brook also spoke in opposition. In response, the Washburn County Corporation Counsel appeared and "addressed alleged errors by the committee."

¶ 7.  One of the primary issues debated before the Board concerned the extent of the Board's review. Tracy Osterhues asked the Board to "hear this case all over again and decide for itself. . . . I am asking [you to] decide this case on your own merits." The Board's counsel advised the Board that it had the power to decide appeals only "where there is deemed to be an error. . . . [Y]our jurisdiction is merely to determine whether there is an error of fact or law below and then to issue an appropriate order." The Board's counsel further advised that even if the Board did find error, the appropriate remedy was not to decide the case itself, but

---

[2] Osterhues presented some evidence to the Board. Although the Board heard the evidence, it ultimately restricted its review to whether the Committee erred procedurally.

to "return [the case] to the zoning committee with orders to them to hear the case or to follow your instructions." One Board member openly expressed the view that he would have voted differently if he had been part of the Zoning Committee, but based on the Board's counsel's advice, he felt constrained because he could not discern any "error" the Committee had made.

¶ 8. The Board voted to affirm the Committee's decision. On January 17, 2002, it issued detailed written findings of fact and conclusions of law. Among the Board's conclusions of law were the following:

> 11. The function of the Board of Adjustment when sitting on an appeal of a decision such as this is, in accord with § 300 of the Zoning Code[,] to correct any error in the decision on appeal. It is not to re-decide the matter or substitute its thoughts or opinions for those of the Committee or administrator who issued the decision brought up on appeal.
>
> 12. The Committee acted within its scope of authority under the Zoning Code and did not commit error.

¶ 9. On February 21, 2002, the Osterhues and two neighboring couples filed a complaint in the circuit court for Washburn County seeking certiorari review pursuant to Wis. Stat. § 59.694(10).[3] The Osterhues reiterated their argument that the Board had "complete power and full authority" to "fully review" the Committee's decision, but did not exercise that power based upon the allegedly faulty advice of its counsel.

¶ 10. The circuit court agreed with the plaintiffs and granted summary judgment in their favor on June 25, 2003, remanding the case to the Board to conduct a

---

[3] The other named plaintiffs were Art and Ellen Jacobs and Andrew and Luella Peterson.

de novo review of the Committee's decision. The Board appealed, and the court of appeals reversed. We granted review.

## II. ANALYSIS

A. Standard of Review

¶ 11. This case is before us on certiorari review. Our function is therefore limited to determining "(1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question based on the evidence." *State ex rel. Ziervogel v. Washington County Bd. of Adjustment,* 2004 WI 23, ¶ 14, 269 Wis. 2d 549, 676 N.W.2d 401 (citing *Arndorfer v. Sauk County Bd. of Adjustment,* 162 Wis. 2d 246, 253, 469 N.W.2d 831 (1991)).

¶ 12. Our review of the extent of the Board's power under the statutory scheme is de novo. *Accord State v. Outagamie County Bd. of Adjustment,* 2001 WI 78, ¶ 22, 244 Wis. 2d 613, 628 N.W.2d 376. We conclude that the Board's action does not satisfy the second prong of the traditional certiorari test; by misconstruing its own authority to act on appeal, the Board proceeded on an incorrect theory of law.

B. General Principles

¶ 13. We begin by reviewing the sources of the Board's authority.

¶ 14. The legislature has given counties substantial discretion in setting up boards of adjustment:

> The county board may provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted under s. 59.69 may provide that the board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained.

Wis. Stat. § 59.694(1).

¶ 15. After creating a board of adjustment and defining its power, "[t]he county board shall adopt rules for the conduct of the business of the board of adjustment . . . ." Wis. Stat. § 59.694(3).

¶ 16. The substantial discretion granted Washburn County in setting up its board means that we must examine the state statute, the County ordinances, and the Board's Bylaws to determine the extent of the Board's power in its review of the Committee's grant or denial of a conditional use permit.

¶ 17. The powers of a board of adjustment are set out in Wis. Stat. § 59.694(7). Specifically at issue here is § 59.694(7)(a), which gives a board the power to "hear and decide appeals where *it is alleged there is error* in an order, requirement, decision or determination made by an administrative official in the enforcement of s. 59.69 or of any ordinance enacted pursuant thereto." (Emphasis added.) In exercising that power, a board may "reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make the order, requirement, decision or determination as ought to be made, and to

236

that end *shall have all the powers of the officer from whom the appeal is taken.*" Wis. Stat. § 59.694(8) (emphasis added).

¶ 18. The particular "appeal" at issue is rooted in the community's zoning structure. Most municipal zoning ordinances provide for both "permitted uses" and "conditional uses" in each zone. Generally speaking, only conditional uses require a special permit from the zoning authority. Washburn County is no exception. Under its zoning ordinance, "[a]ny use listed as a Conditional Use in this Ordinance shall be permitted only upon . . . issuance of a Conditional Use Permit by the Zoning Committee." Washburn County Zoning Ordinance, art. XX, § 200 (1988).[4]

¶ 19. The parties agree that the land in question is zoned "Agricultural (A)." Permitted uses in that zone include general farming, one- and two-family dwellings, and stables, among other things. Washburn County Zoning Ordinance art. IX, § 91 (1988). Uses such as airports, cemeteries, and (important for our purposes) gravel pits are conditional uses in the Agricultural zone. *Id.,* § 92.

¶ 20. If a Washburn County landowner proposes to construct a conditional use on his or her property, he or she must obtain the County's approval by following

[4] The ordinance numbers cited herein correspond to the numbering system contained in copies of the County ordinances provided to the court by the parties. We note that Washburn County has since renumbered its ordinances into a comprehensive collection. For example, the zoning ordinance is now located in Washburn County's Land Development Code (chapter 38 of the new numbering system) at article IV. As neither party objected to the ordinances filed with the court, we will continue to refer to the old numbering system for purposes of this opinion.

the procedures set out in the County Zoning Ordinance. Namely, the landowner must apply to the County Zoning Administrator and receive a permit issued by the Committee. Washburn County Zoning Ordinance art. XX, § 200 (1988). The Committee may request assorted information about the landowner's proposal, and must consider the proposal at a public hearing. *Id.,* §§ 201, 204. If the Committee decides to issue the permit, it may attach any conditions (such as the conditions requested by the Town of Beaver Brook) that it "deem[s] necessary in furthering the purposes of this Ordinance." *Id.,* § 203.

¶ 21.   After the Committee issues its decision, "any person aggrieved" may take an appeal to the Board. Washburn County Zoning Ordinance art. XXX, § 301 (1988). There is no requirement that the "aggrieved person" first make an argument before the Committee. Upon such appeal, the Board takes jurisdiction and "shall hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement or administration of this Ordinance."[5] *Id.,* § 300(1). The Ordinance further provides that the Board "shall adopt such rules as it deems necessary for the conduct of business . . . ." *Id.,* § 302.

¶ 22.   In compliance with the Ordinance, the Board has adopted "Rules and By-laws of the Washburn County Board of Adjustment[ ]" (hereinafter "Bylaws"). The Bylaws provide that the Board assumes "all responsibilities, duties and powers as provided [in Wis. Stat.

---

[5] The Board does not dispute that the Committee is an "administrative official" or that its action was taken "in the enforcement or administration of this Ordinance." Accordingly, the only issue we must decide is the extent of the Board's review.

§ 59.694[6]] and by related statu[t]es." Bylaws, § I(1). Further, the Board has "[t]he powers and duties [as] identified in Section[ ] 59.97(7)[7] of the Wisconsin Statutes and in the Washburn County Zoning Ordinance." *Id.*, § IV. Finally, in exercising its power to hear appeals, the Board

> may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and shall have all the powers of the office [sic] from whom the Appeal is taken, and may issue, or direct the issuance, of a permit.

*Id.*

¶ 23. Apart from minor stylistic changes, this language was copied verbatim from Wis. Stat. § 59.694(8) ("Order on Appeal"). The similarities in language of the statute and the ordinance and Bylaws, coupled with the declaration in the Bylaws that the Board assumes "all responsibilities, duties and powers as provided [in Wis. Stat. § 59.694] and by related statu[t]es," make it apparent that the Bylaws are intended to allow the Board to wield all the power permitted under the state statutory scheme, specifically § 59.694(7) and (8).

---

[6] The Bylaws reference Wis. Stat. § 59.99, which was renumbered § 59.694 by 1995 Wis. Act 201, § 479. According to Act 201, the change was "nonsubstantive." Although it appears that the Board has not amended its Bylaws to take this change into account, we proceed with the understanding the Bylaws effectively refer to § 59.694, as § 59.99 no longer exists.

[7] The parties agree that the reference to § 59.97(7) is an obvious typographical error intended to refer to § 59.99(7) ("Powers of Board"), since renumbered § 59.694(7). *See supra* n.6.

## C. Statutory Interpretation

¶ 24.   As we have repeatedly held, statutory interpretation begins with the plain language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. However, the plain meaning is seldom determined in a vacuum; statutory language should be "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . ." *Id.,* ¶ 46.

¶ 25.   The plain language of both the statute and the ordinance indicates that the Board may hear "appeals" from the Committee's decisions to grant or deny conditional use permits. Wis. Stat. § 59.694(7)(a); Washburn County Zoning Ordinance, art. XXX, § 300. The term "appeals" normally suggests appellate jurisdiction. The Board argues that it would be incongruous for this court to conclude that the Board, on appeal, may conduct a de novo review or take new testimony. The Board argues that the court should consider the dictionary definition of "appeal:" "A proceeding undertaken to have a decision reconsidered by bringing it to a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal." *Black's Law Dictionary* 94 (7th ed. 1999). The Board argues that this definition shows that it is the *decision* of the lower authority that should be the subject of the higher authority's consideration, not the substance of the matter. The Board then cites several non-zoning cases in which courts have construed the word "appeal."

240

¶ 26. It would be easy enough to collect cases interpreting and defining the word "appeal." But "appeal" is a broad term, and the meaning of the word may be different in the administrative context than as normally used by courts.[8] As one court interpreting an identical statute recognized, the meaning of the word "appeal" in any given context "cannot be decided by simply applying an abstract definition to that word." *Messer v. Snohomish County Bd. of Adjustment,* 578 P.2d 50, 56 (Wash. Ct. App. 1978). Rather, "[t]he scope and nature of an administrative appeal or review must be determined by the provisions of the statutes and ordinances which authorize them." *Id.* We agree.

¶ 27. The Board must acknowledge that Wis. Stat. § 59.694(7)(c) gives boards power "to authorize *upon appeal* in specific cases variances from the terms of the ordinance . . . ." (Emphasis added.) In other words, a paragraph in the same subsection of the statute that defines the powers of boards of adjustment and authorizes the "appeal" from the Zoning Committee in this case, uses the word "appeal" in situations which virtually require the taking of evidence. The word "appeal" is used also in connection with variances in the Board's bylaws. Bylaws, § IV(2).

---

[8] As examples, the Employee Trust Funds Board hears "appeals" from the Department of Employee Trust Funds' decisions. Wis. Stat. § 40.02(19); Wis. Admin. Code § ETF 11.02(3), (5) (Jan. 2004). Such an "appeal" is treated as a contested case in which both parties may conduct discovery and present evidence. Wis. Admin. Code §§ ETF 11.03(6), 11.05, 11.06 (Jan. 2004).

Similarly, although in a different context, either party may "appeal" from a judgment in municipal court, and a new trial may be held in circuit court. Wis. Stat. § 800.14(1) and (4).

¶ 28. In addition, resort to the Board's dictionary definition of "appeal" is unnecessary because the Board's Bylaws expressly define the word as "A complaint of an injustice done or error committed *in which both the facts and the law are reviewed.* [The Board of Adjustment hears and decides] Appeals regarding interpretations of [the] County Zoning Ordinance." Bylaws, § XI(2) (emphasis added). This specialized definition of "appeal" differs from the sense in which courts normally use the word. Accordingly, we decline the Board's invitation to limit its power on grounds that the governing statute uses the word "appeal." To confirm the Bylaws' seemingly conclusive definition of "appeal," we consider the context of the statute by looking at the surrounding statutory scheme.

¶ 29. First, we note that the Board has the power to hear appeals "where it is *alleged* there is error . . . ." in the decision below. Wis. Stat. § 59.694(7)(a) (emphasis added). The Board construes this to mean that it must *find* some error before it can perform a substantive review of the Committee's action. At oral argument, the County and the Board disagreed as to the type of "error" the Board must find in order to exercise de novo review or receive additional evidence. The County asserted that the Board could proceed upon a finding of any error, whether that error was procedural, substantive, or equitable. The Board, on the other hand, argued that only a finding of procedural error would permit a substantive review.

¶ 30. The statute does not limit the Board to any prerequisite *finding* of error. All that is required for a board to proceed is that error be *alleged.* The error *alleged* may be procedural, substantive, or equitable because the statute, Wis. Stat. § 59.694(7)(a) and (8), does not limit the type of error that a board may review.

Subsection (8) gives a board "all the powers of the officer from whom the appeal is taken." Because in this case the Committee has the power to take evidence and decide whether to grant a conditional use permit, the Board must have the same power, as the statute gives it "all the powers" the Committee has.[9]

¶ 31. The Board initially acted on this understanding of its power. The statute requires that error be alleged by a "person aggrieved" by the Committee's decision. Wis. Stat. § 59.694(4). There is no dispute, for instance, that Tracy Osterhues was a "person aggrieved" by the Committee's decision or that she and others *alleged* errors by the Committee. Osterhues alleged error in her notice of appeal to the Board and she orally alleged error at the hearing before the Board. The hearing minutes specifically state that the Washburn County Corporation Counsel appeared representing the Committee and "addressed *alleged* errors by the committee." In short, the Board's own minutes acknowledged that the plaintiffs met the requirements necessary to trigger the Board's de novo review.

¶ 32. Next, we note that there is no requirement that the "person aggrieved" participated in any way in the Committee's hearing on the permit application. This is significant because it is conceivable—even likely—that the Board would be the only administrative body with the power to hear the evidence of a "person aggrieved" who did not appear before the Committee (perhaps because the person did not know that the applicant had requested a permit hearing). In that situ-

---

[9] Osterhues points out the circuity in the Board's argument: If the Board may not conduct a substantive review, how may it determine whether there is substantive error in the Committee's decision?

ation, due process would require the Board to allow such a person to present evidence. "The ultimate test to determine whether due process of law has been accorded a party to an administrative proceeding is the presence or absence of fair play," which includes the right to present "competent evidence." *Bituminous Cas. Co. v. DILHR,* 97 Wis. 2d 730, 734, 295 N.W.2d 183 (Ct. App. 1980) (quoting *State ex rel. Richey v. Neenah Police & Fire Comm'n,* 48 Wis.2d 575, 580, 180 N.W.2d 743 (1970)).

¶ 33. In reviewing the Committee's decision, the Board may decide to review the record of evidence presented to the Committee and may render an independent decision on that basis. It may also decide to take new testimony and evidence to supplement the record. If it does not do so, the Board may have to defend its action on an incomplete record in the event of certiorari review.

¶ 34. The plain-meaning interpretation that the Board may exercise de novo review and take additional evidence is confirmed by reference to other courts' interpretation of identical language, and by the past practices of boards of adjustment revealed in past Wisconsin appellate decisions.

D. The Standard State Zoning Enabling Act (SSZEA)

¶ 35. Wisconsin's zoning laws, including the statutes governing county boards of adjustment, date to 1927. In that year, the legislature enacted, almost verbatim, the Standard State Zoning Enabling Act (SSZEA) that had been promulgated by the United States Department of Commerce under Herbert Hoover earlier. *See* ch. 408, Laws of 1927. The similarity between the revised SSZEA (1926) and Wisconsin's law (1927) is unmistakable. The 1926 SSZEA provided:

The board of adjustment shall have the following powers:

1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this act or of any ordinance adopted pursuant thereto.

. . . .

In exercising the above-mentioned powers such board may, in conformity with the provisions of this act, reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from and may make such order, requirement, decision, or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken.

*A Standard State Zoning Enabling Act* 10–11 (U.S. Dep't of Commerce 1926).

¶ 36.  The original Wisconsin statute corresponding to the quoted language is textually identical except that "section 59.97" was substituted for the first instance of "this act." Wis. Stat. § 59.99(7)(a), (8) (1927). To remove any possible doubt, a copy of the SSZEA, annotated with the aforementioned change, appears in the statute's drafting file. *See* Legislative Reference Bureau Drafting File for Assembly Bill 603, ch. 408, Laws of 1927. That our statute was based on the SSZEA is therefore beyond dispute. *See also Klinger v. Oneida County,* 149 Wis. 2d 838, 842 n.3, 440 N.W.2d 348 (1989) (noting that Wis. Stat. § 59.99(10) is modeled on the SSZEA).

¶ 37.  When a Wisconsin statute adopts a model law, it is appropriate to reference the case law of other jurisdictions that have also enacted the same law. *See,*

245

*e.g., Knight v. Milwaukee County,* 2002 WI 27, ¶ 28, 251 Wis. 2d 10, 640 N.W.2d 773; *National Operating, L.P. v. Mutual Life Ins. Co.,* 2001 WI 87, ¶ 30, 244 Wis. 2d 839, 630 N.W.2d 116.

¶ 38. Because the statutory language at issue is taken from a model act that has been adopted in most jurisdictions,[10] there is no paucity of case law deciding the issue now before this court. Courts in other jurisdictions, construing statutes effectively identical to Wisconsin's, have repeatedly concluded that a board of adjustment has broad power to conduct a de novo review and may take additional evidence.[11] *See also* 4

---

[10] The Standard State Zoning Enabling Act was extremely successful, having been "adopted at one point in all 50 states, and is still in effect (with various modifications) in 47 states." *Homer Township v. Zimney,* 490 N.W.2d 256, 258 (N.D. 1992) (quoting 1 *Williams Am. Land Plan,* § 18.01 (1988 rev.)).

[11] *See, e.g., City and County of Denver v. Bd. of Adjustment for City and County of Denver,* 55 P.3d 252, 256 (Colo. Ct. App. 2002) (Because the board has all the powers of the officer from whom the appeal is taken, "[i]n effect, the board steps into the shoes of the zoning administrator because it is granted the power to do that which ought to have been done in the first place. The board's review therefore is de novo."); *Brown v. Montgomery, et al.,* 193 S.W.2d 23, 27 (Mo. 1946) (language from the act authorizes the board to provide a de novo hearing, and the decision below did not bind the board on issues of fact); *Arents v. Squires,* 166 N.E.2d 848, 852–53 (N.Y. 1960) (The Board has "all the powers of the officer from whom the appeal is taken," and the nature of the board's power "is not changed by the particular board or officer that exercises it, but the power classifies itself according to its function."); *Silver Griddle Co. v. City of Oklahoma City,* 570 P.2d 619, 622 (Okla. 1977) ("[I]f the Board of Adjustment thinks that the Appellee should have been granted a permit, then it has the authority to modify the order and grant the permit."); *Fleishon v. Zoning Bd. of Adjustment et al.,* 2 Pa. D.&C.2d 45, 47 (Pa. Com.Pl. 1954) (The board has the

*Anderson's American Law of Zoning* § 2205, at 14–15 (4th ed. 1997) (board has power to conduct a de novo review); 3 *Rathkopf's The Law of Zoning and Planning* § 57:9, at 57–27 (Ziegler rev. 2002) (board has power to "reverse or affirm, wholly or partly . . . and make such order, requirement, decision, or determination as, *in its opinion,* ought to be made in the case.") (emphasis added). In exercising this power, the Board necessarily can—indeed, must—make factual determinations. *See* 3 Rathkopf's *The Law of Zoning and Planning,* § 57:11, at 57–31 (Ziegler rev. 2002).

### E. Wisconsin Practice

¶ 39. Our holding that the Board has discretion to take evidence and perform a de novo review of the Committee's decision finds additional support in the past practice of similar boards in other counties, as evidenced in our case law.

¶ 40. For example, in *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Board of Adjustment,* we noted that, on appeal from a county zoning committee, the Jefferson County Board of Adjustment "conducted the appeal as a contested case hearing and ordered the parties to present their cases as if the appeals were de novo proceedings." 131 Wis. 2d 101, 107, 388 N.W.2d 593 (1986). Similarly, in *Board of Regents of the University of Wisconsin v. Dane County Board of*

---

power to "consider the entire issue de novo" and "was not created to be a mere 'rubber stamp' for an administrative officer."); *Clear Channel Outdoor v. City of Myrtle Beach,* 602 S.E.2d 76, 79 (S.C. Ct. App. 2004) (board exercises "substantial power" with "[f]ew restrictions" and is authorized to apply the ordinance as dictated by the facts before it); *Messer v. Snohomish County Bd. of Adjustment,* 578 P.2d 50, 56 (Wash. Ct. App. 1978) (Board may grant a de novo hearing but is not required to do so).

*Adjustment,* the Dane County Board of Adjustment took extensive testimony and conducted a de novo hearing upon appeal of a zoning committee's grant of a conditional use permit. 2000 WI App 211, ¶¶ 4–5, 8, 238 Wis. 2d 810, 618 N.W.2d 537. In *Wolff v. Town of Jamestown,* the court of appeals observed that when the Town of Jamestown appealed the Grant County Planning and Zoning Committee's grant of a conditional use permit, the Grant County Board of Adjustment "ultimately denied the . . . application [for conditional use permit]." 229 Wis. 2d 738, 742, 601 N.W.2d 301 (Ct. App. 1999). The Grant County Board of Adjustment did not remand the appeal to the Committee. In all three cases, it is plain that the Board of Adjustment exercised its power of de novo review without objection. At oral argument, the Board's counsel anecdotally confirmed that other boards of adjustment use similar practices.

¶ 41.   Quite possibly, Wisconsin boards of adjustment believe they have these powers because widely circulated guidebooks governing Wisconsin board practice so state.

¶ 42.   In 1960 the League of Wisconsin Municipalities published *Zoning Boards of Appeal: A Manual on Their Powers and Duties with Suggested Rules of Procedure* (1960). This manual plainly contemplates the Board hearing evidence, including allowing the appellant to examine the administrative official whose decision is appealed. *Id.* at 7–8. Significantly, "[t]he board is not bound by the decision of the building inspector or administrative officer on questions of fact." *Id.* at 9 (citing *Brown v. Montgomery,* 193 S.W.2d 23, 26–27 (Mo. 1946)).[12] The League's guide interpreted

---

[12] *See supra* n.9. Although the League's guide is written for boards of appeal, not boards of adjustment, the same statutory

identical language found in both Wis. Stat. § 62.23(7)(e)7 and Wis. Stat. § 59.694(7)(a), referencing a board's power "to hear and decide appeals where it is alleged that there is an error," to mean that the Board has the power "to correct mistakes made by the administrative official." *Id.* at 11. Similarly, the Land Use Education Center's *Zoning Board Handbook for Zoning Boards of Adjustment/ Appeals* (July 2001) anticipates that the Board will hear testimony and take other evidence. *Id.* at 12.

## III. CONCLUSION

¶ 43. The Washburn County Board of Adjustment determined that it could not substantively disagree with the County Zoning Committee, and that it could do nothing unless it found procedural error. In adhering to these mistaken principles, the Board proceeded on the wrong theory of law. The Board has the authority to perform a substantive, de novo review of the Committee's decision, and may take additional evidence if necessary. We therefore reverse the decision of the court of appeals and remand this case to the circuit court, so that it may in turn remand the matter to the Washburn County Board of Adjustment for reconsideration in accord with the principles expressed in this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

language from the SSZEA is at issue; the difference is not substantive. Further, the case cited for this proposition, *Brown,* involves a board of adjustment, not a board of appeal.