**COURT OF APPEALS DECISION DATED AND FILED**

**September 14, 2022**

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No. 2021AP1390**

**Cir. Ct. No. 2020CV1233**

**STATE OF WISCONSIN** **IN COURT OF APPEALS DISTRICT II**

---

**SCENIC RIDGE OF BIG BEND HOMEOWNER'S ASSOCIATION, INC.,**

**PLAINTIFF-APPELLANT,**

**V.**

**VILLAGE OF VERNON,**

**DEFENDANT-RESPONDENT,**

**CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,**
**DIAMOND COMMUNICATIONS, LLC, AND**
**NEW CINGULAR WIRELESS, LLC,**

**INTERVENORS-RESPONDENTS.**

---

APPEAL from a judgment of the circuit court for Waukesha County: LLOYD V. CARTER, Judge. *Reversed and cause remanded with directions*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This case involves the siting of a cell tower in a rural residential area in the Village of Vernon (the Village). Scenic Ridge of Big Bend Homeowner's Association (Scenic Ridge), which opposes the tower, appeals from a judgment of the circuit court upholding the Village's approval of the application for a conditional use permit (CUP) for the tower. Because the Village approved the application based on an incorrect theory of law—namely, that state law prevented the Village from considering evidence that the tower would diminish nearby property values—we reverse and remand this matter to the circuit court.

## BACKGROUND

¶2 On May 12, 2020, Cellco Partnership, d/b/a Verizon Wireless, Diamond Communications, LLC, and New Cingular Wireless, LLC (collectively Diamond) applied for a CUP from the Village of Vernon to allow construction of a 165-foot-high cell tower on residential property owned by the Hansen Family Revocable Trust (Hansen Property). The proposed location for the new tower is directly adjacent to several residential homes and properties owned by members of Scenic Ridge.

¶3 The Village plan commission (plan commission) and the Village board[1] held five meetings in June and July 2020 to consider Diamond's application. Area residents objected to the proposed tower on several grounds,

[1] This opinion refers to the Village board either by that name or simply as the "board."

including that it would be incompatible with the surrounding rural residential area and would negatively impact property values. Diamond submitted competing information explaining the rationale for the proposed location and responding to questions and concerns raised by residents. After hearing testimony and receiving various submissions, the Village board voted to approve the CUP by a vote of 3-2, with the Village President voting in favor. Scenic Ridge sought certiorari review and the circuit court upheld the Village's decision. Scenic Ridge appeals.

## STANDARD OF REVIEW

¶4 "Our appellate certiorari review looks only at the [Village]'s decision, not the" decision of the circuit court. ***Eco-Site, LLC v. Town of Cedarburg***, 2019 WI App 42, ¶9, 388 Wis. 2d 375, 933 N.W.2d 179; *see also* ***State ex rel. Peter Ogden Fam. Tr. of 2008 v. Board of Rev.***, 2019 WI 23, ¶23, 385 Wis. 2d 676, 923 N.W.2d 837. Our review is limited to the record made before the Village. ***Eco-Site***, 388 Wis. 2d 375, ¶9. In examining the record, we consider only whether (1) the Village "kept within its jurisdiction"; (2) the Village "acted according to law"; (3) the Village's decision was "arbitrary, oppressive, or unreasonable, and represented its will, and not its judgment"; and (4) the Village "might reasonably make the order or determination in question" based on the evidence before it. ***Id.***; *see also* ***Ogden Fam. Tr.***, 385 Wis. 2d 676, ¶23. Whether the Village acted according to law is a question of law that we review de novo. ***Eco-Site***, 388 Wis. 2d 375, ¶9; ***Ogden Fam. Tr.***, 385 Wis. 2d 676, ¶24.

## THE LAW

¶5 In 2013, the Wisconsin Legislature created WIS. STAT. § 66.0404, which requires municipalities to use statewide standards for the siting and construction of mobile service support structures. 2013 Wis. Act 20, § 1269I.

Although the statute preempts many municipal regulations, it does not preempt all local control because it allows municipalities to enact zoning ordinances "to regulate any … siting and construction of a new mobile service support structure and facilities," subject to the statute's "provisions and limitations." Sec. 66.0404(2)(a)1. (2019-20).[2]

¶6 This case involves the approval of a CUP. Conditional use permits are for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner. ***State ex rel. Skelly Oil Co. v. Common Council of Delafield***, 58 Wis. 2d 695, 701, 207 N.W.2d 585 (1973). In ***Eco-Site***, we held that local control of siting of cellular towers remains within the power of municipalities despite the parameters established by the legislature in WIS. STAT. § 66.0404. ***Eco-Site***, 388 Wis. 2d 375, ¶¶15-23. A municipality can deny approval for a tower under local ordinances addressing conditional uses if, for example, substantial evidence shows that a tower is incompatible with the surrounding area or on the basis of decreased property values. ***Id.*** Such conditional use determinations are not preempted by § 66.0404(4)(c), which provides that a municipality may not prohibit the placement of a mobile support structure within a particular location, or by § 66.0404(4)(g), which provides that a municipality may not deny a cell tower "based solely on aesthetic concerns."[3] ***Eco-Site***, 388 Wis. 2d 375, ¶¶15-23.

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] In ***Eco-Site***, the Town relied upon by the following ordinance setting forth multiple conditions that had to be met in order to grant a conditional use permit:

> (1) Welfare. The establishment, maintenance or operation of the conditional use will not be detrimental to or endanger

(continued)

## DISCUSSION

¶7 Scenic Ridge contends that the Village board's approval of the CUP was based on an erroneous view that it was precluded from considering the tower's negative impact on the area, including diminution of property values. Scenic Ridge points to VERNON, WIS., ORDINANCES ch. 300, § 300-15(C) (2016),[4] which provides, in relevant part, that "[n]o building or structure shall be erected … in a manner which shall be of such character as to adversely affect the nearby properties or general desirability of the neighborhood."[5] Scenic Ridge asserts that

---

> the public health, safety, morals, comfort or general welfare.
>
> (2) Compatible with adjacent land. The uses, values and enjoyment of other Town property in the neighborhood for purposes already permitted shall be in no foreseeable manner substantially impaired or diminished by the establishment, maintenance or operation of the conditional use.
>
> (3) Not impede surrounding property development and improvement. The establishment of the conditional use will not impede the normal and orderly development and improvement of the surrounding Town property for uses permitted in the district.

***Eco-Site, LLC v. Town of Cedarburg***, 2019 WI App 42, ¶14, 388 Wis. 2d 375, 933 N.W.2d 179 (citing TOWN OF CEDARBURG, WIS., CODE § 320-51A (2018)).

[4] The Village's ordinances are available at https://ecode360.com/VE2182 (last visited Sept. 2, 2022).

[5] VERNON, WIS., ORDINANCES ch. 300, § 300-15(C) provides in its entirety as follows:

> No undesirable structures. No building or structure shall be erected, structurally altered, or relocated in a manner which shall be of such character as to adversely affect the nearby properties or general desirability of the neighborhood.

(continued)

the Village proceeded on an incorrect theory of law by determining that the Village was preempted from denying the CUP application on these grounds. We agree.

¶8 A letter from the President of the Village of Big Bend to the Village of Vernon Board exemplifies the concerns expressed by many neighbors at the hearings that the tower would be incompatible with the rural, residential character of the properties that surround it and would diminish the value of those properties. The President pointed out that the Hansen Property was zoned rural residential, with a five-acre minimum lot size. He noted that the tower would have a substantial impact on the property values of the homes in the vicinity, including the single family residential properties in the adjacent portion of the Village of Big Bend, which were intended to be semirural in nature. He stated that the cell tower "will destroy the property values, ruin the enjoyment of residents['] own rural yards, and may pose a safety hazard to the immediately adjacent people and their homes." Several others who testified at the hearings also set forth information

---

> (1) If a question arises about a building or structure, the issue shall be submitted by the Town Building Inspector to the Town Plan Commission for its review.
>
> (2) A determination by the Town Board, upon recommendation of the Town Plan Commission, shall be made and stated in writing, including the reason for denying a permit or conditions of approval for a permit, and may be based upon considerations that the design or appearance is of such an unorthodox or abnormal character as to have an adverse effect on the nearby properties or general desirability of the neighborhood.

During the meetings held by the Village board concerning Diamond's application, two residents near the Hansen Property referenced this ordinance in their remarks opposing approval of the CUP.

regarding the impact the tower would have on the area, including decreased property values.[6] Residents expressed concerns regarding the uses, value, and enjoyment of their land.

¶9 In the board's deliberations, the Village President began by stating that he believed the tower was incompatible with the residential area and would reduce local property values. Two trustees then agreed with this assessment. This included Trustee Swanee, who voted to deny the CUP and stated that there was substantial evidence that the proposed tower would decrease property values:

> TRUSTEE SWANEE: I could read this page on this particular condition. I feel that it violates our code or land use plan. It's a residential area. In my mind it does not belong in an area where there are literally hundreds of other locations that would be better suited to the residents.[7] (Inaudible) for the tower folks. (Inaudible) to put your tower, and I concur with all your comments about the property value. A tower in your backyard does reduce property values.
>
> I read and have recorded four different surveys of study that say exactly that by professionals in the industry. But from the—and a number of others. They all say the same

[6] In addition to several studies provided to the Village board, many residents expressed serious concerns at the hearings about property values, personally believing that there would be a negative impact. Although public hearings on CUPs are not subject to the rules of evidence, we note that, even under those stricter rules, a witness may give his or her opinion as to value of property the witness owns. *See* ***Eco-Site***, 388 Wis. 2d 375, ¶17 (citing ***Wilberscheid v. Wilberscheid***, 77 Wis. 2d 40, 48, 252 N.W.2d 76 (1977) (an owner is competent to give opinion evidence on value)); *see also* WIS. STAT. § 907.01.

[7] WISCONSIN STAT. § 66.0404(4)(p) prohibits denial of an application to build a cell tower "based on an assessment by the political subdivision of the suitability of other locations for conducting the activity." Trustee Swanee's comment about other suitable locations arguably falls within this provision, but no party argues that it undermines his comments regarding diminished property values and, in any event, no violation of the statute occurred because the Village board approved Diamond's application.

> thing. You don't want to pay that much for your house that has a tower right there. That's an issue. (Inaudible).
>
> So, you know, to me it also is not—it's contrary to the public health and safety, you know. I think we've spent enough on that subject, but that aside (inaudible) deny the application.
>
> And then, of course, it was harmful and noxious, offensive is the one that I kind of key out because if you have no reason in my mind to vote against it, but also I felt that it is not a reason to deny the application. So on this particular one I would vote that it's—yeah, it's condition applicable. Has there been substantial evidence provided by petitioner. I would say no, there's no evidence other than (inaudible). It's okay.
>
> Then substantial evidence to the contrary, I've got yes in that we've got all these studies that say (inaudible). And does it meet our standards for that area, residential area. So can the condition be met? No.

¶10 Another Trustee agreed that the cell tower would cause a "drop" in property values and would not be compatible with the neighborhood:

> SPEAKER: I appreciate all the comments and all the information. We received a lot of information. It was really—we needed to go through this significantly, and I believe we did, and I can only adhere to what President Portner and Trustee Swanee said in regard to some of the points that they made.
>
> The particular one that sticks in my mind is the drop in property values. A home that's located near a cell tower is going to be—lose the value and also be hard to sell, and that's proven by home values right now, and was drawn out in testimony with one of the residents with regard to a property by hers, a cell tower up there, and they indicated the house has been for sale for approximately 380 some days, and they dropped the price, and it's next door to a cell tower. So that's the significant fact to me because property values—we all have houses and we're all directly affected by something that happens in our neighborhood, whether it's a cell tower or a business that moves in close to us that affects your property value one way or another. So at this point I—that's one of the main reasons that I have in making a judgment call with regard to this application. So I think besides being not really compatible with the

> neighborhood, it's not exactly significant to have something like this in your backyard.

¶11 Village President Portner, in calling for a vote on the question, agreed with the others that there was substantial evidence that the proposed tower would negatively impact property values, but added that he believed that state law prevented the trustees from considering that information or denying the application on that basis:

> Now, we've heard a lot of discussion and heard the village board level made a motion to approve this, and again it's a very difficult decision, and you've heard my comments. And although I'm personally opposed to this tower and I wish we could deny it, ***I think the state statutes have tied our hands too much with respect to what we can consider,*** and unfortunately and very frustrating to me that ***the state statute and the powers above us, the law has prevented us locally, local governors from considering (inaudible). And including whether there's a diminution of property values, which I agree that we found substantial evidence.*** At the end it's all about money, and Mr. Hans[e]n, by entering into this lease, and I'm not necessarily laying the blame on the cell tower company for this, but by entering into this lease, he's ***increased the value of his property at the expense of others***. And without clear guidance under ***state law whether we can deny it on that basis***, and also on the basis of our land use plans, I'm reluctant to deny it, so I second that motion [to approve].

(Emphases added.)

¶12 The Village board then voted 3-2 to approve the CUP.[8] The deciding vote was that of the Village President, who erroneously believed that the Village could not consider whether the tower would adversely affect nearby property values or the desirability of the neighborhood. Again, he stated that there was substantial evidence that the tower would diminish property values,

[8] The plan commission did not make a recommendation to approve or deny.

emphasizing that the Hansen Property benefitted at the expense of others. He indicated that he would deny the CUP on "that basis," but stated that state law preempted, or prevented, that consideration.

¶13 A determination as to whether a local board acts according to law is a determination of law. *See, e.g.*, ***Ogden Fam. Tr.***, 385 Wis. 2d 676, ¶24; ***Eco-Site***, 388 Wis. 2d 375, ¶9; ***Osterhues v. Board of Adjustment for Washburn Cnty.***, 2005 WI 92, ¶12, 282 Wis. 2d 228, 698 N.W.2d 701 (reviewing de novo whether board acted based on an incorrect theory of law). ***Ogden Family Trust*** provides guidance. In that case, the local board voted 2-2 on an assessor's decision to reclassify property from agricultural to residential for property tax purposes, which sustained the residential assessment. ***Id.***, 385 Wis. 2d 676, ¶20. The supreme court determined that this decision was based on the erroneous belief that a business purpose was required in order for land to be classified as agricultural land. ***Id.***, ¶25. This belief was an error of law. ***Id.*** The court identified the erroneous belief by reviewing the assessor's statements and those of the board members prior to their votes as well as their votes. ***Id.***, ¶¶13-20.

¶14 Diamond and the Village do not develop any argument disputing the central tenant of ***Eco-Site*** that WIS. STAT. § 66.0404 does not preempt local ordinances that address considerations of compatibility and diminution in property value. Nor do they make the case that these are inappropriate considerations. Rather, Diamond and the Village postulate that the board felt constrained because substantial evidence in the record showed that the cell tower would satisfy all of the Village's requirements, including *not* adversely impacting property values, and thus, under WIS. STAT. § 62.23(7)(de)2.a., the board was required to approve the

CUP.[9] That, however, is not what the trustees said. Indeed, it is directly *contrary* to what the trustees said. Three trustees stated that substantial evidence showed the tower would cause a diminution in property values. The Village President underscored that this was a view held by the others, with his use of "we" when stating "we found" that there was substantial evidence of diminution.[10]

¶15 Moreover, the Village President twice stated his belief that the state law *prevented them from considering* decreased property values. These statements squarely undermine Diamond's postulation that WIS. STAT. § 62.23(7)(de)2.a. was the state law referenced by the Village President as compelling approval.[11] That leaves WIS. STAT. § 66.0404, the only other statute identified for the trustees, as the state law the Village President erroneously believed preempted, or *prevented*, the board from considering the adverse impact on the surrounding areas, including a diminution of property values. The Village President's statements set forth an erroneous belief regarding the law, an error of law, not a statement of the trustees'

---

[9] WISCONSIN STAT. § 62.23(7)(de)2.a. states in relevant part that "[i]f an applicant for a [CUP] meets or agrees to meet all of the requirements and conditions specified in the city ordinance or those imposed by the city zoning board, the city shall grant the [CUP]."

[10] The parties agree that *Diamond* has the burden to provide substantial evidence that it satisfies the requirements and conditions established by the local municipality. *See* WIS. STAT. § 62.23(7)(de)2.b. The trustees were advised that "'[s]ubstantial evidence' means facts and information, other than merely personal preferences or speculation, directly pertaining to the requirements and conditions an applicant must meet to obtain a conditional use permit and that reasonable persons would accept in support of a conclusion." "[S]ubstantial evidence is less than a preponderance of the evidence, [but] it is 'more than a mere scintilla of evidence and more than conjecture and speculation.'" ***Oneida Seven Generations Corp. v. City of Green Bay***, 2015 WI 50, ¶44, 362 Wis. 2d 290, 865 N.W.2d 162 (citations omitted).

[11] We note that Diamond and the Village fail to set forth key sentences from the Village President's statement in their brief. In any event, despite their repeated say so, the Village President clearly did *not* state that the Village had to approve Diamond's application because substantial evidence showed that there would be no impact on property values.

"personal preference." *See* § 62.23(7)(de)1.b. (substantial evidence does not include "personal preferences"). The President's remarks make clear that it was only his mistaken belief that the Village could not, as a matter of law, consider evidence of diminution that allowed the application to be approved.[12]

¶16 Diamond and the Village argue that VERNON, WIS., ORDINANCES ch. 300, § 300-15(C) does not apply to a cell tower. They contend that the ordinance's references to "undesirable buildings or structures" encompasses only those which are akin to junk or that otherwise lack a useful purpose. This argument does not carry the day for two reasons. First, Diamond and the Village do not argue that the board could not consider the incompatibility of the cell tower with the surrounding residential area or evidence that it would diminish nearby property values in deciding whether to approve the CUP. Thus, regardless whether those considerations fall within the terms of Section 300-15(C), the fact remains that the Village President who cast the deciding vote to approve the CUP did so because he believed the board could not consider them. That is an error of law which infected the board's decision-making process and which warrants reversal.

¶17 Second, Diamond's and the Village's argument ignores the plain language of the ordinance, which we may not do. We give statutory language its

---

[12] A "Decision Worksheet," filled in *after* the board's vote, indicates that the board did not find substantial evidence of diminution of property values. This is contrary to the Village President's remarks and, in any event, does not cure the error of law that infected his vote.

"common, ordinary, and accepted meaning" and "reasonable effect to every word." ***State ex rel. Kalal v. Circuit Court for Dane Cnty.***, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110; ***Milwaukee Dist. Council 48 v. Milwaukee County***, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153 ("In interpreting municipal ordinances, we apply the same principles used in statutory interpretation."). VERNON, WIS., ORDINANCES ch. 300, § 300-15 regulates "[j]unk or undesirable buildings or structures"; the use of "or" clearly distinguishes junk as something other than undesirable buildings and structures.[13] Moreover, subsection (C) contains no language which supports the "no useful purpose" limitation that Diamond and the Village engraft upon it. Subsection (C) merely states that "[n]o building or structure shall be erected, structurally altered, or relocated in a manner which shall be of such character as to adversely affect the nearby properties or general desirability of the neighborhood." We see no basis to construe this language as applying only to those structures that lack a useful purpose.

---

[13] Diamond and the Village also argue that the "Decision Worksheet" provided to the trustees, which sets forth certain language that appears in WIS. STAT. § 62.23(7)(de), supports its postulation that the trustees were compelled to approve the CUP because they found "substantial evidence" that the permit application satisfied all of the Village's requirements. This argument fails to account for the fact that the trustees, so far as we can tell, were not informed that they could deny the application if they found substantial evidence that it would adversely impact surrounding property values. The worksheet merely cited a general ordinance, VERNON, WIS., ORDINANCES ch. 300, § 300-22(A), and informed the trustees that they could impose conditions on their approval to ensure that the proposed use would not violate "this code." The worksheet did not cite § 300-15(C) or any other village ordinance relating to the impact of the tower on the surrounding area. It did not inform the trustees that they could consider the adverse impact on the neighborhood or diminution of property values. Given Diamond's and the Village's arguments that the ordinance is not applicable or, in any event, that a denial because it is undesirable is preempted, along with the lack of any reference in the Decision Worksheet, it is no surprise that the Village President was seemingly unaware that the board could deny the application if it determined that the conditional use would adversely impact property values or otherwise have an adverse impact on the area.

¶18 Diamond and the Village do proclaim, without developing the argument, that applying the ordinance because the cell tower is deemed "undesirable" would be inconsistent with—and therefore precluded by—another village ordinance that permits cell towers as a conditional use in areas that are zoned rural residential. *See* VERNON, WIS., ORDINANCES ch. 300, § 300-33(E) (referring to Exhibit A to ch. 300 identifying permitting uses in various zoning districts). To the extent that this was the thinking behind consideration of the CUP, this too would be an incorrect legal assumption. As we explained in ***Eco-Site***,

> In Wisconsin, a conditional use is "one that has been legislatively determined to be compatible in a particular area, not a use that is always compatible at a specific site within that area." Thus, there is no presumption that a "conditional use is ipso facto consistent with the public interest or that a conditional use is a use as of right at a particular site within an area zoned to permit that conditional use." The [Town of Cedarburg] ordinance permits towers, if the conditions are met, but it does not rubber stamp them.

***Eco-Site***, 388 Wis. 2d 375, ¶19 (citations omitted).

## CONCLUSION

¶19 The Village board's decision was based on an erroneous legal belief. As such, the appropriate action is for the circuit court to remand this matter to the Village to consider the CUP in a manner that is consistent with this decision. *See* ***Osterhues***, 282 Wis. 2d 228, ¶43; WIS. STAT. § 68.13(1) ("The court may affirm or reverse the final determination, or remand to the decision maker for further proceedings consistent with the court's decision."). Here, remand is appropriate because the defect—proceeding on an incorrect legal basis—can be cured on

remand. *See* ***Hartland Sportsmen's Club, Inc. v. City of Delafield***, 2020 WI App 44, ¶¶14, 19, 393 Wis. 2d 496, 947 N.W.2d 214.

*By the Court*.—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

*Sheila T. Reiff*
*Clerk of Court of Appeals*